Withers, J.
dissenting. Ido not feel that the question in this case is so clear of doubt as to warrant me in affirming that my brethren are wrong in the judgment they have pronounced. But I am not satisfied with their conclusion, and am disposed to be bold enough to say so.
When McCants undertook to collect a note payable to Kinsler & Jordan, on its face, I do not understand that he was dealing with Jordan, who employed him to collect it. as a member of the firm of Kinsler &. Jordan. The case on the circuit was put expressly on the ground that he contracted with Jordan in his individual capacity. There was no evidence in the case (which was made by agreement of parties on the statement set forth in the brief) that McCants had any knowledge, at the time he received the paper for collection, of the private arrangements between Kinsler and Jordan. If the fact be assumed, that he contracted to act as attorney quoad hoc for the partnership, previously dissolved, then any question in the case is superseded by such assumption; and that inference will be contrary to the footing on which I understand the case to have been considered by Court and counsel, and decided on the circuit. Indeed, the fact that McCants did not enter into the service of Kinsler & Jordan, but of the latter individually, ought to be and must be conceded ; because the plaintiff (as well as some of this Court at least) holds McCants as liable to him on the ground of actual notice of his right to the money, and on no other ground. The matter of notice would be entirely immaterial, if McCants was dealing, originally, with the firm, through one of its members as such ; for in that case he would be liable to the survivor ex vi termini.
The question, then, is reduced to this: can the jus tertii be set up to defeat the obligation of McCants to his principal ? I do not regard the question as varied by the death of Jordan, who, *609 by special appointment, had an agency coupled with an interest: but that it must be met as though Jordan had been alive, suing McCants, and Kinsler had interposed his' right as a partner to receive his share of the money collected, or to prevent the payment of it to Jordan.
In such case, Kinsler would have failed, accordirtg to Nickolson vs. Knowles, (5 Mad. 47). There, Nickolson had been employed as a broker to effect insurance of a ship for one Gilpin, who failed, and his assignees employed Nickolson to receive, as their agent, a sum due from the underwriters for salvage. After-wards, the defendant, Knowles, gave notice to Nickolson that he was a secret partner with Gilpin, and required him not to pay the salvage to Gilpin’s assignees. Nickolson filed his bill of inter-pleader against the assignees of Gilpin, and against Knowles. Upon a motion for an injunction, it was decided, that it was not a proper bill of interpleader: that the plaintiff was an agent, authorized by the assignees to demand and receive the money for them, and having in that character demanded and received it, was bound to pay it to them, notwithstanding the claims of a third person — that a mere agent to receive for the use of another could not, by notice, be converted into an implied trustee : that his possession was the possession of his principal. I hold that, as to McCants, the interest of Kinsler was secret. Patterson and Alderson, JJ., of the Common Pleas, afterwards recognized the authority of the case cited, as appears from the 23 Eng. C. L. R. 312; although in the case then before them, the jus tertii was allowed to be interposed to prevent a fraud established in that particular case.
I think my view of this case is also much supported by the case of Roberts vs. O'Gilvey, (4 Exch. 89).
I would also claim the authority of the case of Dixon vs. Hammond, (2 B. & Al. 310); for although in that case the survivor of a firm was allowed to recover from a broker the proceeds of a policy of insurance, yet it was permitted on a principle that supports the payment by McCants in this case, to wit, that the broker had insured the vessel' lost for the partnership, and *610 though it was proved that the vessel was the property of the deceased partner, and admitted that the money was also, still the Court held, that the broker could not say so, because of his relation as agent for the partnership, no matter what others might be allowed to say. The language of Abbott, C. J., was, “ all the rest of the world except the defendant .might dispute the legal title of the plaintiffs to the ship, but he cannot do it.”
I invoke, likewise, the aid of the principle which was made to control the case of Sims vs. Brittain, (24 Eng. C. L. R. 78). A deceased part owner of a ship, who himself had been appointed ship’s husband, constituted the defendants his agents for general purposes, and among others to receive and pay money for the ship. Besides the deceased partner’s general account, the defendants also kept an account in his name as managing owner of the ship’s receipts, and disbursements. It happened that a sum of £2000"for freight could not be obtained without another of the owmerá joining the managing and deceased owner in a receipt; and accordingly Sims, a plaintiff, joined the deceased and managing owner in á receipt; the defendants thereupon obtained the money and placed the same to the credit of the deceased owner, their principal. It is true that defendants sought to avail themselves of a balance claimed to be due to them on the general account of the deceased owner, but the nonsuit granted by Lord Tenterden, and supported on the motion above, was not put on that ground at all — for it was urged and was undeniable, that defendants knew, as well by the accounts, kept in their house and by them, between their principal and his partners, as by the fact that the identical sum in question came to their hands only by virtue of a partnership act, that the money belonged to the partnership, of which the plaintiffs in the cause were survivors. So that there was full notice — as explicit as MeCants could have had. The nonsuit was sustained, at nisi prius and above, on the footing that there was no privity between the defendants and the plaintiffs. It was said, by the Court, “ although the concurrence of one of the plaintiffs was necessary fo enable the defendants to receive the money from the East India *611 Company, yet it was received by the defendants as the agents of Gribble, and they, by such receipt, became accountable to him for it.’ Here the agents knew there had been a partnership, and had explicit notice that there were survivors when they placed the fund in account with their principal.
A rigid fidelity of agents to principals seems to be required in all Courts, of a character not unlike that enforced upon a tenant towards his landlord. Such an idea is expressed in Stonard vs. Dunkin, (2 Camp. 344), where Lord Ellenborough observed— “ Whatever the rule may be between the buyer and seller, it is clear the defendants cannot say to the plaintiff, ‘ the malt is not yours,’ after acknowledging to hold it on his account. By so doing they attorned to him.” The principle gathers strength when it grows out of the relation of attorney at law and clients, and this is demonstrated in our daily practice, where the point is presented in other forms: especially when he is not permitted to violate professional confidence.
I desire it to be always understood that I distinguish between the defence which McCants, as Jordan's agent, can make for paying over to the representative of Jordan, and that which could be urged by the debtor, Williamson, or his administrator, (Hammond), or by a person no more than a stake-holder, or by one in whose hands the effects of a partnership debtor might be attached. These persons might not be able to defend themselves by proving payment to the representative of the deceased partner.
The action in the present case is brought by Kinsler, as survivor: Has he any right to maintain the action in that character Í He would have had against the debtor, that is, against the administrator of Williamson; but has he such right against McCants ? If McCants, under a contract with Jordan, received the money after Jordan’s death, as he did, then Kinsler cannot sue McCants as survivor, for there never was a time when the partnership could sue McCants; and it is in such case only that a surviving partner can sue as such. For this, vide Smith vs. Barrow, (2 T. R. 476). If this be good law, then the nonsuit *612 may stand on that ground; nor is it unusual to sustain nonsuits upon a ground, arising out of the case, even though it may not have been urged in argument, as well as to set them aside for reasons not taken on circuit, or even in argument here. If money come to the hands of a third person due to the estate of a deceased testator, and after his death, though the executor may join counts framed in his representative and individual character, he can recover only on that which claims in his individual character; and so it is in the case of a partnership, where the cause of action arises after the dissolution: vide same case. One test sometimes applied to the question involved here, is the enquiry whether there be mutuality of obligation and redress. In the case, heretofore cited, where the broker was made to respond to the surviving partner, it was argued by the Court that this should be so, for the reason, among others, that his redress for premium paid was against the partnership originally and the survivor ultimately, since he had advanced it for the firm — notwithstanding it was entirely established that the vessel was the separate property of the deceased partner, and that his representative must recover the money received by the broker on the policy. How would such a test work in the present case? Suppose McCants had taken a note from Jordan for a fee in consideration of his professional services in conducting the case against Williamson’s administrator, and, instead of collecting the money, had failed, could he have compelled Kinsler to pay such note, or any part of it? I apprehend not. No doubt Kinsler would have cited the fact that he was dealing with Jordan as an individual ; that if not, yet he dealt with a member of the former firm after its dissolution, and his new contract imposed no liability on the other member.
We ought not to be misled by the fact that the note McCants undertook to collect was payable to Kinsler & Jordan and sued in their name. The facts of the case make it the same as if the action had been in the name of Kinsler & Jordan, for the use of Jordan, In such cases, even on questions of discount, this Court has taken effectual notice of the interest, equitable though it be *613 of him for whose use the action is brought, and so stated on the record. The judgment of this Court proceeds on the idea of the naked right of Kinsler, as shown on the record of Kinsler & Jordan vs. administrator of Williamson. I am strongly persuaded that if McCants had sued in the name of Kinsler an open account assigned by Kinsler to another, Kinsler’s legal interest would have kicked the beam in a contest with the assignee for the money, whether Kinsler had sued McCants or the sheriff. It is not always then that the legal right of a plaintiff will prevail even in a Court of law. This Court did not look only at the legal right of a survivor in the case of Rowand, survivor, vs. Fraser, & Co. (1 Rich. 325;) but it regarded the private arrangements between the partners, and enforced them in regard’ to a fund collected by the creditor owing to the partnership by an insurance company, although the survivor there as here insisted upon his legal rights in that character.
Upon the whole, I should prefer to uphold the strict fidelity of the attorney at law to the client he knew, who, for any thing we can know, or this attorney can shew, is in advance for the partnership, may have been bankrupted by such advancements, and, therefore, his estate entitled to this fund as between him and the plaintiff here; which circumstances, if before us as facts, with the further one that the survivor was insolvent, would probably make us lukewarm in hunting out the general rules of strict principles in favor of the surviving partner. Yet if true, such circumstances could not vary the legal doctrine, if it is to be so unbending as to notice no equity.